**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000731
29-NOV-2023
08:09 AM
Dkt. 110 SO**

NO. CAAP-22-0000731

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ERIC STROEVE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO.  1CPC-21-0000568)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge and Nakasone, J.,
with Hiraoka, J., concurring and dissenting separately)

Self-represented Defendant-Appellant Eric **Stroeve**[1] appeals from the **"Judgment** of Conviction and Sentence" entered by the Circuit Court of the First Circuit on December 5, 2022.[2]  For the reasons explained below, we vacate and remand.

In the early morning hours of May 10, 2021, someone set fire to Aliʻiōlani Hale, a state historical building that houses the Hawaiʻi Supreme Court.  Stroeve was indicted by a grand jury on May 14, 2021.  He was charged with Arson in the First Degree,

---

[1]  According to Stroeve, his last name "is pronounced like scuba. It's Dutch[.]"

[2]  The Honorable Kevin A. Souza presided.  An amended judgment was entered on December 20, 2022, effective *nunc pro tunc* December 5, 2022.  The amended judgment corrected a typographical error in the amount of credit for time served.

in violation of Hawaii Revised Statutes (**HRS**) § 708-8251(1)(b).[3] He pleaded not guilty.

The State filed a motion to determine voluntariness of statements Stroeve made to a Honolulu Police Department (**HPD**) officer. The circuit court entered "Findings of Fact, Conclusions of Law, and Order Granting State's Motion to Determine Voluntariness" on June 6, 2022.

Jury trial began on July 12, 2022. The State adduced evidence that Stroeve was identified as the person shown in a surveillance video lighting a fire near the koa doors of the Judiciary History Center entrance, located at the front of the Hawaiʻi Supreme Court building. The fire caused smoke damage, damage to the koa doors, and damage to parts of the interior carpet, for a total amount of $815,637.40.[4]

The jury found Stroeve guilty as charged. The Judgment was entered on December 5, 2022. Stroeve was sentenced to twenty years in prison, with credit for time served. A Free Standing Order of Restitution of $115,721.45 was entered on December 7, 2022. This appeal followed.

Stroeve contends that the circuit court erred by: **(1)** admitting into evidence footage from the body-worn camera of HPD officer Timothy **Massie** during the hearing on the State's motion to determine voluntariness; **(2)** granting the State's motion to determine voluntariness; **(3)** "suppressing" Officer Massie's body-worn camera footage on July 8 and 13, 2022; and **(4)** admitting "false testimony" from a trial witness.[5]

**(1)** Stroeve contends that the circuit court erred by admitting footage from Officer Massie's body-worn camera into evidence during the hearing on the State's motion to determine

---

[3]    HRS § 708-8251(1)(b) (2014) provides: "(1) A person commits the offense of arson in the first degree if the person intentionally or knowingly sets fire to or causes to be burned property and: . . . (b) Knowingly or recklessly damages the property of another, without the other's consent, in an amount exceeding $20,000."

[4]    $815,637.40, the total amount of damages introduced at trial, consisted of $55,500.00 to repair the koa doors; new carpet, $7,894.00; air duct cleaning, $30,235.34; and smoke remediation, $722,008.06.

[5]    Stroeve did not appeal his sentence or the restitution order.

voluntariness. The hearing was held on May 17, 2022. Stroeve watched Officer Massie's body-worn camera video on the circuit court's monitor. Stroeve initially declined to stipulate the video into evidence. The State called Officer Massie as a witness. Officer Massie identified Stroeve as the person he arrested on May 11, 2021. Officer Massie authenticated State's Exhibit No. 1 as a compact disc containing video footage from his body-worn camera depicting his interaction with Stroeve on May 11, 2021. The State moved Exhibit No. 1 into evidence. The circuit court asked Stroeve if he had any objection. Stroeve said, "No, Your Honor." The court then admitted State's Exhibit No. 1 into evidence "for the purposes of this motion only." The court did not err in so doing. See Hawaii Rules of Evidence Rule 103(a)(1) ("Error may not be predicated upon a ruling which admits . . . evidence unless . . . a timely objection . . . appears of record[.]"); Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 379 n.29, 944 P.2d 1279, 1322 n.29 (1997) (noting that "complete failure to object will waive the point" concerning admissibility of evidence).

(2) Stroeve contends that the circuit court erred by granting the State's motion to determine voluntariness. During the hearing on the motion, Officer Massie testified that Stroeve made three statements after he was handcuffed and patted down: "Not a survivor left tomorrow morning[,]" "All the courtrooms burned to the ground[,]" and "Courts of bullshit." Stroeve argues that "the Miranda warning was never provided" and he "never waived his Fifth Amendment right against self-incrimination." Whether a person's constitutional right against self-incrimination was violated is a question of law reviewed de novo under the right/wrong standard. State v. Kazanas, 138 Hawaiʻi 23, 33, 375 P.3d 1261, 1271 (2016).

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that a suspect must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be

appointed for him." Id. at 479. Under Hawaiʻi law, a defendant objecting to admissibility of their statement must establish that the statement resulted from (1) "interrogation" while they were (2) "in custody." State v. Hewitt, 153 Hawaiʻi 33, 43, 526 P.3d 558, 568 (2023). There is no dispute that Stroeve was in custody when he made the statements. The issue presented is whether he was under interrogation.

The circuit court made findings of fact and conclusions of law when granting the State's motion. Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(C) requires that Stroeve's opening brief quote or reference any findings or conclusions urged as error. Stroeve didn't do this, although he generally contends the circuit court abused its discretion in finding Officer Massie credible, in finding that Stroeve was not questioned by police during his arrest, and ruling that the statements in question were voluntary. To promote access to justice, the supreme court instructs that self-represented litigants shouldn't be automatically foreclosed from appellate review because they fail to comply with court rules. Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020). Accordingly, we review the circuit court's findings to determine whether they were clearly erroneous, Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

The circuit court found:

> 6.     Officer Massie was in the process of arresting [Stroeve], checking for weapons, and attempting to get on-scene booking information, such as name and birthday. During this process, [Stroeve] did not give his booking information.
>
> 7.     While [Stroeve] was in custody, Officer Massie asked [Stroeve] whether he had anything sharp with respect to his pockets. Officer Massie did not ask [Stroeve] any other questions.
>
> 8.     At the time [Stroeve] made the three utterances, [Stroeve] was not responding to any particular questions.
>
> 10.[6] The court finds Officer Massie's testimony to be credible and reliable.

---

[6]     There was no finding of fact numbered 9.

> 11. Through Officer Massie's testimony, [Stroeve] spontaneously uttered the following statements: "not a survivor left tomorrow. Every courtroom burned to the ground." "Court of bullshit."

Based on our review of the record, including Officer Massie's body-worn camera video, findings of fact nos. 6, 7, and 8 were supported by substantial evidence and were not clearly erroneous. As to finding of fact no. 10, "[i]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001)).

Finding of fact no. 11, however, was clearly erroneous. Officer Massie's body-worn camera video reflects that while walking up to Stroeve, Officer Massie asks Stroeve to put down his knife. Stroeve complies. Officer Massie asks Stroeve to drop his scissors. Stroeve complies. Officer Massie asks Stroeve, "*can you give me your name and stuff now?*"

Stroeve looks at a second police officer at the scene and says, "you guys are back again."

The second officer tells Stroeve, "'kay right now we're speaking to you because you're a suspect, that matches the description, or your person matches the description of an arson suspect, okay?"

Officer Massie asks what Stroeve has in his hand, and says, "what is that, keys? Drop 'em please." Stroeve bends down and Officer Massie says, "no, don't reach for stuff my man."

The second officer continues, "so that's why we're talking to you . . ."

Stroeve says to Officer Massie, "you don't have to worry about me doing anything."

Officer Massie replies, "well, you never know anymore with people, right?"

Stroeve says, "You guys have to ask questions and listen . . ."

The second officer continues, "so now I'm telling you why we're speaking to you, because you match the description of an arson suspect.  Okay?  *You want to give us your information*?"

Stroeve pauses, looks at the second officer, and says, "Um, *I want to give you the whole info*."

"*I'll take whatever you got*," says the second officer.

Stroeve says, "Okay, April 4, 2012."

"No, I don't want to go that back far [sic]," says the second officer.

"I am the victim of attempted murder by the Maui County Police Department," says Stroeve.

The second officer replies, "*Right now, we're only talking about an arson case*."

During this time Officer Massie is taking out his handcuffs and asks Stroeve to turn around.

Stroeve asks, "Why are you putting me in cuffs?"

Officer Massie responds, "Because you're going to be arrested for that now."

"For what?"

Officer Massie responds, "He just told you, the arson."

"Arson?" asks Stroeve, as he turns to face Officer Massie.

"Stop trying to turn," says Officer Massie.  The second officer secures the handcuffs on Stroeve.

"Wait, somebody's alleging I arsoned a place?"

"Yes, that's exactly what it is," says Officer Massie. "And you matched the description, the video, the clothing, so right now you're going to be placed under arrest for the arson, okay."

As the second officer informs dispatch that he has "one custody," a third officer arrives at the scene.

Stroeve asks, "And you guys conspired to murder me how many times since I got out of prison?"

"You know, I don't know what you're talking about," says the second officer.

"And take my hands?"

Officer Massie responds, "No, would you like to give us your information before you get into a blue-and-white, or will you give us your information right now?"

"Well, I guess I'm going to talk to a detective."

Officer Massie asks the third officer to take photos of Stroeve.

"You guys are forgetting that you tried to murder me and take my hands, twice.  Right.  And, this is not a reasonable seizure.  You haven't even asked questions and investigated anything."

"*That's because we can't ask you the questions*," says Officer Massie.

"It's justified for me to go to war against you since you guys declared war against me."

Officer Massie asks Stroeve, "Can you face this way please?"

While being photographed, Stroeve says,

And you've been stalking me illegally, without a warrant, this entire time.  Unreasonable seizures.  [Unintelligible]  You guys owe me like five hundred million dollars.  And you're going to keep going more and more in the hole.  You think you're in the right, and you're going to put me in cuffs now.  Once again.  You're full of shit.  I don't give a fuck.  You guys are so full of shit it ain't even fuckin' possible.  [Unintelligible]  This is an unreasonable seizure.

As Officer Massie instructs the other officers about recovering evidence, Stroeve says, "Yeah, I want evidence against every fucking cop that's been stalking me twenty-four seven.  Fucking assholes.  Twice tried to take my hands.  Murder [unintelligible]."

Officer Massie asks Stroeve, "You got anything that's going to poke me?"

Stroeve doesn't respond.  Officer Massie searches Stroeve's pockets.  Stroeve says, "You're taking stuff out of my pockets and moving it around."

Officer Massie explains, "Feels like you might have a knife or some kind of weapon in here, that's why."

"Ah, you could have asked and I would have told you no. But you can't do that."

"We can."

"No you can't."

"'Kay, I gotta take this off you okay, this right . . ."

"You can't arrest me.  I own this fucking police department."

"I heard that many a time."

Stroeve continues:

> And the state of bullshit.  You guys don't have enough money to afford [unintelligible] fucking retarded.  Hey, ah, what happened to my dead kids?  Ann Margaret that you murdered?  You guys murder people during the Arita [phonetic] trial, and uh, covered it up and haven't told 'em any kids [unintelligible].  Really.  God I wonder.  How long ago did this happen?  And your fucking needs.  This is awesome.

During this time, Officer Massie is searching through Stroeve's many layers of clothing, pockets, and a bag attached to his belt by a chain, while the other officers are standing by. Officer Massie asks Stroeve, "Can you lift your hands please? Thank you."  Officer Massie continues searching through Stroeve's clothing.

Stroeve then made the following underscored statements, which the circuit court found to be spontaneous utterances:

> Somebody please pull out a [unintelligible]. <u>Not a survivor left tomorrow morning.  Every courtroom.  Burned to the ground.  Court of bullshit.</u>  Broke every fucking rule of law, been in violation of my rights for nine years now.  And counting.  And keep on going.  Takes a licking and keeps on ticking.  You guys are dead.  Not by me, the whole world's gonna come [unintelligible].  Twenty-two million dead, murdered.  But you couldn't stop.  And never gave closure to everybody on planet earth, they're all coming here to fucking kill you.

After additional conversation not relevant here, Stroeve was placed in a marked police vehicle.

"[T]he touchstone in analyzing whether 'interrogation' has taken place is whether the police officer should have known that his or her words and actions were reasonably likely to

elicit an incriminating response from the defendant." <u>Kazanas</u>, 138 Hawaiʻi at 38, 375 P.3d at 1276 (cleaned up). Although Officer Massie only asked Stroeve for his "name and stuff," the second police officer told Stroeve he resembled the suspect in an arson case and asked, "You want to give us your information?" At that time, the police officers knew they were going to arrest Stroeve. When Stroeve responded, "Um, I want to give you the whole info," the second officer should have realized that his question to Stroeve was likely to elicit an incriminating response. At that point, Stroeve should have been given the <u>Miranda</u> warnings. He was not. Instead, the second officer said, "I'll take whatever you got" and "right now, we're only talking about an arson case." Under <u>Kazanas</u>, this constituted interrogation. Stroeve's later statements should not have been admitted at trial.

The circuit court erred by granting the State's motion to determine voluntariness and allowing the admission of Stroeve's un-Mirandized statements. We conclude that the error was not harmless beyond a reasonable doubt.

At trial, Officer Massie was asked whether Stroeve said anything after he was arrested, and testified to the statements as follows:

> He had said three things. They were -- the first one was: Courts of bullshit. The second one was: All courts burn to the ground. And then the last thing he said was: Not a survivor left tomorrow morning.

The gist of Stroeve's defense was twofold: (1) that he lit a different fire at the same location three days before this incident; and (2) that he did not intend for the fire he lit to cause any damage at all, and certainly not in an amount exceeding $20,000.00. Stroeve testified that "[he] was not there on May 10th", the date of the incident at issue, and stated: "I believe 100 percent that this incident occurred on Friday, May 7th." Stroeve claimed that the surveillance video from the date of the incident was forged using his image from three days before. He lit the fire to "make an example of the capitol patrol sheriffs"

who he claimed had robbed him "five weeks before." Stroeve wanted to show that the capitol patrol sheriffs were "probably too busy robbing people, that their building security [wa]s so poor that somebody could potentially set up a fire at one of their buildings and not get caught." Stroeve explained that he "didn't have a motive to really damage the building at all[,]" and that "this is a criminal conspiracy . . . to frame me for damages and a crime that I did not commit . . . ." Stroeve testified that "the first thing [he] lit on fire" were the "No Trespassing" laminated cards, which Stroeve "placed on the ground[,]" "not touching the doors." Stroeve claimed the "flames were not going to touch the doors[,]" and the flames were "self-extinguished." Stroeve then placed the stanchions over the laminating cards but said "none of these stanchions are touching the doors[,]" and explained that "even if these stanchions caught fire, the doors are not going to catch fire." Stroeve "did not believe that there was any risk of any damage at all." Stroeve asserted that when he "got back with the trash bag, those two laminating cards were no longer burning" and when he looked back at the fire from nearby he believed that the fire "completely went out" because "there was [sic] no more flickering lights coming from the fire." Stroeve testified: "I concluded that the fire self-extinguished itself [sic] like it should have. Although I cannot confirm that it completely went out, I believe that it did." Stroeve specifically denied any intention to cause over $20,000 of damage, as follows:

> [By standby counsel]: Let me ask you this, then, Mr. Stroeve: Did you intend to cause more than $20,000 of damage to the Judicial [sic] History Center?
>
> [By Stroeve]: No, I did not.

Stroeve also maintained that he "had no motive to damage the doors."

"Erroneously admitted evidence is evaluated under the harmless beyond a reasonable doubt standard." State v. Jones, 148 Hawaiʻi 152, 170, 468 P.3d 166, 184 (2020) (quoting State v. Matsumoto, 145 Hawaiʻi 313, 327, 452 P.3d 310, 324 (2019)). "The

erroneous admission of evidence is not harmless when there is a <u>reasonable possibility</u> that the error might have contributed to the conviction." <u>State v. Baker</u>, 147 Hawaiʻi 413, 435, 465 P.3d 860, 882 (2020) (emphasis added) (citing <u>State v. McCrory</u>, 104 Hawaiʻi 203, 210, 87 P.3d 275, 282 (2004)).

Here, the record reflects that there is a reasonable possibility that the erroneous admission of Stroeve's statements might have contributed to his Arson in the First Degree conviction. <u>See</u> <u>id.</u> The element of proof at issue, based on Stroeve's testimony, was whether the State proved Stroeve's state of mind with respect to the result of his conduct, of damage "in an amount exceeding $20,000." HRS § 708-8251(1)(b). The State had to prove that Stroeve acted at least recklessly with respect to the resulting amount of damage, i.e. that Stroeve "consciously disregard[ed] a substantial and unjustifiable risk that his conduct will cause such a result." HRS § 702-206(3)(c) (2014). Stroeve's defense minimized the scope of the fire he admitted lighting as "no longer burning"; that it "completely went out"; and that there was no "risk of any damage at all" to the building because neither the lit laminated cards nor the stanchions he later placed on top of the cards were "touching the doors." Stroeve's defense attempted to show that any risk that the doors would catch fire causing over $20,000 in damage was not "substantial and unjustifiable" and that even if such level of risk was shown by the evidence, he did not "consciously disregard" that risk. <u>See</u> <u>id.</u>

Stroeve's statements of "Every courtroom. Burned to the ground" such that "Not a survivor [would be] left tomorrow morning"--contradicted Stroeve's defense that he never intended the fire to damage the doors or the building in an amount over $20,000. The statements on their face indicated that Stroeve had motive against the "[c]ourts," which he felt were "bullshit," that he intended to cause catastrophic damage to, and loss of life by burning "[a]ll courtrooms" "to the ground" with "[n]ot a survivor left." The statements contradicted Stroeve's testimony in which he denied any "motive to really damage the building at

all."  The erroneously admitted statements constituted powerful evidence against Stroeve's credibility and logically headlined the State's closing argument as follows:

> THE COURT: . . . Ms. [Prosecutor], you may get set up, and then when you're ready, let us know, and you may begin your closing argument.
>
> [The State]: <u>Not a survivor left tomorrow.  All courts burned to the ground.  Court of bullshit.  These were [Stroeve]'s statements to Officer Massie.  What courtroom?</u>  You heard testimony that the Supreme Court is a historical building.  It's in the City and County of Honolulu.  It is one where tourists flock to to take photos.  It houses the Judiciary History Center.  There was testimony that there are very intricate areas in that building.  And most importantly, there were koa wooden doors.
>
> <u>This is the Hawaii Supreme Court building.  This is what [Stroeve] burned.  He burned the koa doors at the Judiciary History Center on May 10th, 2021</u>.

(Emphases added.)  See <u>State v. Lora</u>, 147 Hawaiʻi 298, 310-11, 465 P.3d 745, 757-58 (2020) (holding that based on "the manner in which [an erroneous admission] was presented by the DPA, and the reliance upon it during closing argument" rendered the error "highly prejudicial" and not harmless beyond a reasonable doubt); <u>see also</u> <u>State v. Williams</u>, 149 Hawaiʻi 381, 393-94, 491 P.3d 592, 604-05 (2021) (holding that the prosecutor's opening statement introduction of out-of-court communications––that had previously been barred by the defense's motion in limine–– constituted prosecutorial misconduct that was not harmless beyond a reasonable doubt because it "greatly undermined [the defendant]'s credibility").  Here, the State's prominent reliance on Stroeve's improperly admitted statements to undercut Stroeve's credibility and his defense of lack of the requisite state of mind and motive to cause damage exceeding $20,000 was "highly prejudicial."  <u>See</u> <u>Williams</u>, 149 Hawaiʻi at 393-94, 491 P.3d at 605-05 (2021).  On this record, there is a reasonable possibility that the erroneous admission of the statements might have contributed to Stroeve's arson conviction, and the error was not harmless beyond a reasonable doubt.  <u>See</u> <u>Baker</u>, 147 Hawaiʻi at 435, 465 P.3d at 882 (citing <u>State v. McCrory</u>, 104 Hawaiʻi at 210, 87 P.3d at 282.)

**(3)** Stroeve contends that the circuit court erred by "suppressing" Officer Massie's body-worn camera footage on July 8 and 13, 2022.

On July 8, 2022, the circuit court conducted a trial status conference and heard motions in limine. Toward the end of the proceeding, Stroeve asked, "in trial, are we going to get to see the body-worn camera data that comes from the [Axon evidence.com] website?" The circuit court informed Stroeve, "as your own attorney in this case, if you believe that the State is proffering certain items of evidence that is inappropriate or objectionable, it will be your duty and responsibility, then, to object, state your reason for the objection. And the Court will rule upon that objection." Stroeve acknowledged, "Okay." The circuit court did not "suppress" anything during the July 8, 2022 proceeding.

On July 13, 2022, the second day of trial was held. The State did not offer Officer Massie's body-worn camera footage into evidence. Neither did Stroeve. The circuit court did not "suppress" the footage during the second trial day.

Stroeve argues that during the second trial day, he "makes a reasonable request . . . for the court to produce [Officer Massie's body-worn camera] video to 'prove [Officer Massie was] committing perjury.'" The transcript of Stroeve's cross-examination of Officer Massie doesn't support his argument:

> Q. Twice you stated in your arrest affidavit that I refused to give you any information. And if you were going to testify before the grand jury on May 14th, 2021, and state under oath that I made three statements to you that you are alleging is information, why would you write that I gave you no information in your arrest report and in your affidavit?
>
> A. Because the information provided was done after the fact.
>
> Q. It was after the arrest; correct?
>
> A. It was found out after the arrest, when I rewatched the body camera.
>
> Q. Weren't these statements added to the body camera?

A. They were not.

Q. You're sure about that?

A. A hundred percent positive.

Q. You realize that you're under oath right now?

A. Yes, sir.

Q. And we could show the body camera and prove that you are committing perjury?

THE COURT: I'm going to strike that last question as being argumentative.

Next question, Mr. Stroeve.

MR. STROEVE: I am going to pass for cause.

THE COURT: No further questions, you mean?

Mr. Stroeve, no further questions?

MR. STROEVE: No further questions, Your Honor.

Stroeve never requested that the circuit court "produce" Officer Massie's body-worn camera footage, which was Exhibit 1 for the hearing for the State's motion to determine voluntariness. Stroeve never offered the footage into evidence, nor does he point to any part of the record showing that he objected or raised an issue to the circuit court about not being able to use the footage at trial. Because Stroeve never requested or offered it, the circuit court cannot be said to have "suppressed" it. Stroeve's third argument is without merit.

**(4)** In light of our disposition, it is not necessary to reach Stroeve's last point of error.

For the reasons explained above, the December 5, 2022 "Judgment of Conviction and Sentence" entered by the circuit court is vacated, and we remand for a new trial.

DATED: Honolulu, Hawaiʻi, November 29, 2023.

On the briefs:

Eric M. Stroeve,
Self-Represented Defendant-
Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Karen T. Nakasone
Associate Judge

**OPINION BY HIRAOKA, J.**
**CONCURRING IN PART AND DISSENTING IN PART**

I concur with parts (1) and (3) of the majority's summary disposition order. I also concur with the portion of part (2) holding that the trial court erred by granting the State's motion to determine voluntariness, and by allowing Officer Massie to testify about Stroeve's statements at trial. But I respectfully disagree with the majority's conclusion that the error was not harmless beyond a reasonable doubt.

Trial error is not to be viewed in isolation or considered in the abstract; it must be examined in light of the entire proceeding and given the effect to which the whole record shows it is entitled. State v. McDonnell, 141 Hawaiʻi 280, 297-98, 409 P.3d 684, 701-02 (2017) (citation omitted). We must determine whether there is a reasonable possibility the error might have contributed to the conviction. Id. "[E]ven if the trial court erred in admitting evidence, a defendant's conviction will not be overturned if the error was harmless beyond a reasonable doubt." State v. Veikoso, 126 Hawaiʻi 267, 276, 270 P.3d 997, 1006 (2011) (cleaned up). "Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless." Id. (cleaned up).

As acknowledged by the majority, Stroeve asserted two defenses at trial: (1) he didn't light the fire shown in the surveillance video because he actually lit a different fire at the same location three days before, and the video shown at trial was "forged" using his image from three days before; and (2) he didn't *intend* for the fire he lit to cause any damage at all, and certainly not in an amount exceeding $20,000. The majority concludes that Stroeve's incriminating statements contradicted Stroeve's defense that he never *intended* the fire to cause any damage, much less cause more than $20,000 in damage.

But "intention" is not a state of mind applicable to the *results-of-conduct* element[7] of Arson in the First Degree. HRS § 708-8251 (2014) provides, in relevant part:

> (1)  A person commits the offense of arson in the first degree if the person intentionally or knowingly sets fire to or causes to be burned property and:
>
> . . . .
>
> (b)  Knowingly or **recklessly** damages the property of another, without the other's consent, in an amount **exceeding $20,000**.

(Emphasis added).  "A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result."  HRS § 702-206(3)(c) (2014).

The jury was instructed, without objection:

> The Defendant, ERIC STROEVE, is charged with the offense of Arson in the First Degree.
>
> A person commits the offense of Arson in the First Degree if he intentionally or knowingly sets fire to or causes to be burned property and knowingly or **recklessly damages the property of another**, without the other's consent, in an amount **exceeding $20,000**.
>
> There are six material elements of the offense of Arson in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These six elements are:
>
> 1.   That, on or about May 10, 2021, in the City and County of Honolulu, the Defendant, ERIC STROEVE, set fire to or caused to be burned property of another; to wit the State of Hawaii; and
>
> 2.   That the Defendant did so intentionally or knowingly; and
>
> 3.   That the Defendant knowingly or recklessly damaged the property of another; to wit the State of Hawaii by such conduct; and
>
> 4.   That the Defendant did so without the consent of the State of Hawaii; and

---

[7]    HRS § 702-205 (2014) defines the elements of an offense as "(1) conduct, (2) attendant circumstances, and (3) results of conduct[.]"

2

5. That the Defendant was aware that the damage exceeded $20,000 or consciously disregarded a substantial and unjustifiable risk that the damage exceeded $20,000; and

6. That the damage to the property exceeded $20,000.

. . . .

A person acts knowingly with respect to a result of the person's conduct when the person is aware that it is practically certain that the person's conduct will cause such a result.

. . . .

A person acts **recklessly** with respect to a **result of the person's conduct** when the person consciously disregards a **substantial and unjustifiable risk** that the person's conduct will cause such a result.

A risk is **substantial and unjustifiable** if, considering the nature and purpose of the person's conduct and the circumstances known to the person, the disregard of the risk involves **a gross deviation from the standard of conduct that a law abiding person would observe in the same situation**.

(Emphasis added.)

Stroeve's testimony was:

Well, I can talk about what -- what I observed, because I am the only witness in this case, and **I was there at the scene**. And so I've seen a lot of versions of the surveillance video. I really don't want to go through it anymore. **I think the jury's going to have an opportunity to view this video when they deliberate**.

. . . .

And what they're going to see is that I did -- **the first thing that I lit on fire was some plastic laminating cards that said "No Trespassing."** And the video's going to show that they self-extinguished. And what I intended to do with those, there was a few of them placed in the windowsill. **There were two stanchions placed near them, and it damaged some of the paint on the stanchions**.

Then **I'm going to carry two of these burning laminating cards to the door**. And I wanted to check for a draft because there was a gap underneath that door. I wanted to see if there was any air going in and out, and there wasn't. There's no wind happening. And you will notice that these laminating cards were placed on the ground. They were not touching the doors. The flames were not going to touch the doors.

Then **I'm going to go get another stanchion**. And I'm going to lay it parallel to the doors and **set it directly**

> ***over the burning laminating cards.*** And that stanchion is not going to catch fire because these stanchions are painted. So first, a fire would have to burn through the paint. And ***then I am going to get three more stanchions.***
>
> So there's a pattern of these stanchions where one is laying down. The next one goes across the first one. Third one's going to go across the second one. The last one that is perpendicular to the doors is the top stanchion. And none of these stanchions are touching the doors. So even if these stanchions caught fire, the doors are not going to catch fire.
>
> Even if -- so when ***I go get this trash bag of discarded mail*** and I'm walking back to the Supreme Court, I'm actually in shock that nobody has arrived. I really didn't plan on being able to succeed at bringing that bag back, because I already lit these two fires that are going out. And you will notice that I don't go back onto the step. ***I dump it where the two stanchions are.*** They're the farthest away from the doors. And when ***I light this paper on fire***, it is the farthest away from the doors, on the edge of the step.
>
> And so there has to be a chain of events that is going to happen here. And this is the first deviation from the truth in the surveillance video. All the fires of paper, wood, are going to be yellow flames. What you're going to see in this video is flames that become white, and you can't see through them.
>
> And you will notice the two laminating cards that I lit and brought to the door are going to burn out. So you're going to see now these small yellow flames, where it's flickering. So imagine now this paper fire. It's not one big fire. It's a bunch of individual paper letters. They were going to burn very quickly, and then they're going to all self-extinguish. So what you should see is a lot of little flames at the end of this, burning out.
>
> But you will notice that ***once this fire starts, it's going to turn white. It's going to become massive, and it's never going to stop burning. Now, this fire's going to continue to burn for some time. Then the video's going to stop***.

(Emphasis added.) Stroeve also admitted he used a "high butane lighter" to light the paper he got from the trash bin at the post office.

State's Exhibit 34 is the Judiciary's security camera video of Stroeve and the fire. It was admitted into evidence without objection. It shows Stroeve lighting the cards in a windowsill. Stroeve places the burning cards at the base of the Judiciary History Center's koa doors. Stroeve goes in and out of the frame, returning each time with stanchions. He puts them, as

he testified, "directly over the burning laminating cards."  The video clearly shows that the cards didn't "self-extinguish." Stroeve leaves the frame for a longer time.  He returns with a trash bag.  The fire still hasn't gone out.  He empties the bag on the burning stanchions.  He sets the trash on fire with his high-butane lighter.  He leaves the frame — for the last time — *while the fire is still burning*.  The video clearly shows none of the fires he set "self-extinguished."  After he leaves, the fire becomes "massive."  It doesn't go out until first responders appear and extinguish the blaze.  The video shows a large burned-out hole in one of the doors.  The hole wasn't there before the fire.  Firefighters enter the History Center but the external security camera doesn't clearly show what they do inside.

Stroeve admitted *intentionally* setting fire to State property — the "No Trespassing" cards.

The security video and Stroeve's testimony clearly showed Stroeve either *intentionally* or *knowingly* caused other State property — the stanchions — to burn by "set[ting] it directly over the burning laminating cards."

The video also showed overwhelming and compelling evidence that Stroeve's leaving the still-burning fire unattended was *at least* reckless.  In my view, no reasonable juror could conclude that Stroeve's leaving the fire burning at the base of the History Center's doors wasn't "a gross deviation from the standard of conduct that a law abiding person would observe in the same situation."  Thus, it doesn't matter whether Stroeve *intended* to cause more than $20,000 of damage to State property. It is enough that Stroeve *recklessly* caused it.

The majority relies upon cases which, in my view, are distinguishable.  In State v. Lora, 147 Hawaiʻi 298, 465 P.3d 745 (2020) and State v. Williams, 149 Hawaiʻi 381, 491 P.3d 592 (2021), the improperly admitted evidence was the testimony of the complaining witness.  In both cases, the verdict hinged either completely or largely upon the jury's evaluation of the complaining witness's credibility.  Lora, 147 Hawaiʻi at 311, 465

P.3d at 758 ("The jury's verdict rested on it accepting the CW's account as true, and the erroneously admitted testimony was specifically used to bolster the credibility of her account."); Williams, 149 Hawaiʻi at 397, 491 P.3d at 608 ("T.Y., the complaining witness, was the only witness other than the defendant who could describe the actual acts constituting the offenses.").

Here, the only witnesses to the results-of-conduct element were Stroeve and the videotape — which, in my view, overwhelmingly and compellingly defeats both of Stroeve's defenses and shows that Stroeve's leaving the fire when and where he did was at least "a gross deviation from the standard of conduct that a law abiding person would observe in the same situation." In my view, the erroneous admission of Stroeve's statements was harmless beyond a reasonable doubt.

Because of my conclusion, I must address Stroeve's fourth point of error. Stroeve contends that Wayne **Taniguchi** gave false testimony. Taniguchi is the Judiciary's Facility Management Division manager. He testified at trial and also at Stroeve's restitution hearing.

During the trial, Taniguchi authenticated State's Exhibit No. 27F as an invoice for $722,008.06 from Eco Clean Hawaii for fire and smoke remediation. The exhibit was received in evidence without objection. Taniguchi explained that the remediation process involved "cleaning up water damages and smoke damages within the building[.]"

During the restitution hearing, Stroeve asked Taniguchi, "during your testimony to the jury, you had testified that the *air conditioning* was *$730,000* in the trial. Is -- do you -- do you recall making that statement?" (Emphasis added.)

Taniguchi testified, "I don't recall making that statement, sir."

Stroeve asked, "You don't recall telling them that the damages was [sic] over $700,000?"

Taniguchi responded, "Not at all."

6

Stroeve argues Taniguchi's testimony during the restitution hearing "represents fraud" because Taniguchi didn't recall his testimony from the criminal trial five months earlier. Taniguchi's testimony that he doesn't recall making the statement was consistent with his trial testimony. The $722,008.06 paid to Eco Clean Hawaii was for fire and smoke remediation, not air conditioning. Stroeve asked Taniguchi whether the smoke would be contained in the office by the fire. Taniguchi explained that the heavy smell will travel *through* the air-conditioning system, but Taniguchi didn't testify that the $722,008.06 was to repair or remediate the air conditioning. Taniguchi didn't remember testifying "that the air conditioning was $730,000" because he never gave such testimony.

Stroeve also argues that Taniguchi's trial testimony was false because the restitution documentation attached to the presentence report "does not contain any invoice from Eco Clean Hawaii for 'fire and smoke remediation[.]'" Stroeve didn't call the person who prepared the restitution report as a witness to ask why the State wasn't claiming an additional $722,008.06 in restitution. The record contains no evidence that the Judiciary did not actually incur that cost because of the arson committed by Stroeve.

For these reasons, I would affirm the Judgment of Conviction and Sentence.

/s/ Keith K. Hiraoka
Associate Judge